IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>Plaintiff,<br><br>v.<br><br>TELMARK, LLC et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. JFM 03 CV 0266<br>)<br>)<br>)<br>) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR TRANSFER VENUE**

Plaintiff Fidelity and Deposit Company of Maryland ("F&D" or "Plaintiff") hereby files this Opposition to Defendants' ("Defendants") Motion to Dismiss or, in the alternative, Transfer Venue ("Motion").

Maryland's "long arm" jurisdiction statute unequivocally provides this Court with specific personal jurisdiction over the Defendants in this action. Defendants' argument to the contrary is simply wrong. Defendants seek a transfer to a more convenient venue pursuant to 28 U.S.C. § 1404(a), but have failed to make the strong showing required that either public or private interest factors overcome the preference granted to a plaintiff to select its home forum as the place of litigation. Accordingly, Defendants' Motion should be denied on all accounts.

# ARGUMENT

## I. THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

When a defendant challenges the personal jurisdiction of the court, the plaintiff has the burden of making a *prima facie* case that such jurisdiction exists. *Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* at 62 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

F&D's complaint (the "Complaint") expressly alleges that the Defendants, among others, acted through their agent Agway to enter into the 1986 Agreement of Indemnity ("Agreement") with F&D, and that Agway had both actual and apparent authority to act on behalf of the Defendants. *See* Complaint ¶¶ 14 – 52. The Complaint further alleges that the Defendants, among others, pursuant to the Agreement, contracted to indemnify F&D in exchange for good and valuable consideration of a surety bond program made by F&D in favor of third parties. *Id.* ¶¶ 24 – 30. And, the Complaint alleges that F&D has made demands on the Defendants under and in conformance with the terms of the Agreement, which demands the Defendants have refused to honor, in breach of their obligations under the Agreement. *Id.* ¶¶ 60 – 61.

A court may exercise personal jurisdiction over a non-resident defendant if it has either general jurisdiction or specific jurisdiction. *Nichols v. G. D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). As Defendants concede, if Maryland's long arm statute authorizes the Court to exercise personal jurisdiction over the Defendants, and if the exercise of that jurisdiction comports with the Due Process Clause of the Fourteenth Amendment, then Defendants are within the personal jurisdiction of the Court. *See* Defendants' Memorandum of Law in Support

- 2 -

of Motion, at 4-5 ("Mem."); *see also Nichols*, 991 F.2d at 1199 (noting two-step process of long-arm statute and due process analyses); *ESAB Group, v. Centricut*, 126 F.3d 617, 622-23 (4th Cir. 1997) (same). This Court, sitting as a Maryland court, has specific jurisdiction over these Defendants under two separate provisions of Maryland's "long-arm" jurisdiction statute.[1]

### A.     This Court Has Personal Jurisdiction Pursuant to §6-103(b)(6)

Maryland's "long-arm" statute provides that a non-resident may be sued in a Maryland court if the cause of action arises from one of the acts enumerated in the statute. Md. Code, Cts. & Jud. Proc. § 6-103(a). The statute has a "specialized subsection relating to insuror [sic] and surety relationships." *McLaughlin v. Copeland*, 435 F. Sup. 513, 529 (D. Md. 1977); *McKown v. Criser's Sales & Service*, 48 Md. App. 739, 743, 430 A.2d 91, 95 (1981) (same). That specialized subsection provides that:

> (b) A court may exercise personal jurisdiction over a person who, directly or by an agent:
>
> * * * *
>
> (6) ***Contracts to insure*** or act as surety for, or on, any . . . ***risk, contract, obligation, or agreement*** located, executed, or ***to be performed within the State*** at the time the contract is made . . . ."

Md. Code, Cts. & Jud. Proc. § 6-103(b)(6) (emphasis added). There can be no doubt that Maryland's long arm statute reaches the Defendants to this action: in 1986, the Defendants, "by an agent," Agway, "contract[ed] to insure," *i.e.*, indemnify, F&D on the "risk, contract, obligation" that F&D had assumed by virtue of its surety bond made in favor of certain third

---

[1] Plaintiff does not respond to Defendants' argument concerning general jurisdiction because a plaintiff does not need to establish both specific and general jurisdiction, and it is clear beyond equivocation that specific jurisdiction lies on these pleadings for facts for these Defendants.

parties on behalf of the Defendants and others. F&D's obligation was "to be performed within the State."

Defendants' assertion that F&D's claims do not arise from the Defendants' contacts with Maryland because the Defendants were not signatories to the Agreement is without merit. *See* Mem. at 7. Subsection (b)(6) of Maryland's long arm statute implicitly requires that a defendant be a ***party*** to the contract that gives rise to the personal jurisdiction under that subsection, but does not require that the defendant be a ***signatory***. Such an interpretation is impermissible because it would conflict with the provision that expressly permits personal jurisdiction to be exercised over defendants who have acted through an agent. Md. Code, Cts. & Jud. Proc. § 6-103(b). F&D's Complaint clearly alleges an agency relationship between Agway and the Defendants, and there can be no serious debate that Defendants fall within this Court's specific personal jurisdiction afforded by subsection (b)(6) of Maryland long-arm statute.

A court's exercise of personal jurisdiction under the long arm statute must also comport with the requirements of the Due Process Clause. For subsection (b)(6) and most other subsections of Maryland's long arm statute, the due process analysis is subsumed in the analysis of the application of the statute to the facts of the case, because Maryland's highest court has determined that the statute was intended to reach constitutional limits, requiring only "minimum contacts." *See Mylan Lab.*, 2 F.3d at 60 n.3 (citing *Curtis v. State*, 284 Md. 132, 150, 395 A.2d 464, 474 n.7 (1978)).[2] Thus, with but two exceptions under Maryland's long arm statute "[a]

---

[2] Subsections 6-103(b)(3) and (b)(4), sections that are ***not*** implicated in the instant case, are exceptions to the general rule that Maryland's long arm statute is coterminous with constitutional limits of due process. *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 318 (D. Md. 1983). The Maryland legislature intended subsections (b)(3) and (b)(4) "to allow the exercise of personal jurisdiction within more narrow limits than the Due Process Clause would tolerate." *Id.* Judge Motz's statement in *Harry & Jeanette Weinberg Found. v. ANB Inv. Mgmt. & Trust Co.*, 966 F. Supp. 389, 391-92 (D. Md. 1997), selected by

court has specific jurisdiction over a defendant when a cause of action arises out of the defendant's minimum contacts with the forum." *Ritz Camera Ctrs.. v. Wentling Camera Shops,* 982 F. Supp. 350, 353 (D. Md. 1997) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)).

A defendant's minimum contacts "need not involve physical presence in the state, but must still be 'purposefully directed toward the forum state.'" *ESAB Group*, 126 F.3d at 623 (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994)); *see also McGee v. International Life Ins. Co.*, 355 U.S. 220, 222 (1957) (establishing the proposition that when an insurer fails to pay an insured's claim, the forum in which the insured resides has personal jurisdiction over the insurer, even if the insurer had just one insurance contract and one insured party in that state) (discussed and quoted in *Camelback Ski Corp. v. Behning,* 307 Md. 270, 276, 513 A.2d 874, 877 (Md. 1986)). The process of entering into the 1986 Agreement (as well as prior indemnity agreements) clearly involved oversight, review, direction and authorization from F&D's home office in Baltimore, a fact that was, or should have been, obvious to the Defendants and/or Defendants' agent, Agway. See Hayden Decl. ¶¶ 4 – 8. Through Agway then, Defendants "purposely directed" their activities toward F&D, "a resident of the forum state," for the purpose of entering into a contract with F&D. Defendants have now breached that contract, conduct giving rise to the instant action. Thus, "Plaintiff's cause of action arises out of the defendant's minimum contacts with the forum." *Ritz Camera*, 982 F. Supp at 353.

---

Defendants for quotation, was specifically directed to jurisdictional contacts required for the exercise of personal jurisdiction under Section 6-103(b)(4), a higher standard than is required for the exercise of jurisdiction pursuant to Section 6-103(b)(6).

B.  **This Court Has Personal Jurisdiction Pursuant to § 6-103(b)(1)**

Similarly, Defendants are subject to the personal jurisdiction of this Court under § 6-103(b)(1). Subsection (b)(1) provides for the exercise of personal jurisdiction over one who, either directly or by an agent, "transacts any business . . . in the State," provided that the claim arises from the business transacted. Md. Code, Cts. & Jud. Proc. § 6-103(a) & (b)(1). Transacting business within the State does not require physical presence, but is focused on actions culminating in purposeful activity directed toward the state or a resident thereof.

> "[A] nonresident who has never entered the State, either personally or through an agent, may be deemed to have 'transacted business' in the state within the meaning of subsection (b)(1)." *Snyder v. Hampton Industries, Inc.* 521 F. Supp. 130, 141 (D. Md. 1981). As long as the nonresident's 'actions culminate in 'purposeful activity' within the State," jurisdiction is proper under (b)(1). *Sleph v. Radtke,* 76 Md. App. 418, 427, 545 A.2d 111 (1988) . . . .

*Potomac Design v. Eurocal Trading*, 839 F. Supp. 364, 369-70 (D. Md. 1993) (citing cases) (finding that subsection (b)(1) gave the court personal jurisdiction over the defendant corporation, which had solicited business from the plaintiff, a Maryland corporation, and then entered into a purchase contract with the Maryland corporation). By virtue of the fact that contracting to insure or indemnify a resident of the state is but one variety of transacting business, Defendants are subject to this Court's jurisdiction pursuant to § 6-103(b)(1), based on the same analysis that subjects them to this Court's jurisdiction pursuant to § 6-103(b)(6).

This Court has specific personal jurisdiction over the Defendants in this action pursuant to both §§ 6-103(b)(1) and 6-103(b)(6). Accordingly, Defendants motion to dismiss for lack of personal jurisdiction should be denied.

## II.  TRANSFER UNDER 28 U.S.C. § 1404(A) IS NOT WARRANTED

Defendants' alternative request for a transfer pursuant to 28 U.S.C. § 1404(a) should also be denied. A court in its discretion may transfer a case "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Defendants have not met their burden of proving that a § 1404(a) transfer is warranted. *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (burden is on movant to show that transfer to another forum is proper). A plaintiff should be deprived of its chosen home forum only when "the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

In considering a transfer under § 1404(a) a court considers:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 n.4 (D. Md. 1998) (citations omitted).

### A.  Public Interest Factors Support a Denial of Transfer

In applying factors relating to public interest and policy, "[a] plaintiff's choice of forum is generally accorded considerable deference unless the plaintiff is a non-resident of either that forum or of or the location where the cause of action arose." *Ralph v. Long*, Civ. A. DKC

- 7 -

993281, 2001 WL 706034, *2 (D. Md. June 14, 2001) (citing cases); *Development Co. of America. v. Insurance Co. of North America*, 249 F. Supp. 117, 118 (D. Md. 1966) ("The starting point for any inquiry along these lines [a § 1404(a) transfer] is the Supreme Court mandate that 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'") (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)); *Pennsylvania Mfrs. Ass'n Ins. Co. v. Fed. Realty Inv. Trust*, No. Civ. A. DKC 98-3969, 2000 WL 964771, *3 n.2 (D. Md. June 6, 2000) (plaintiff's choice of forum remains an important consideration) (citing cases).

F&D is and has been a Maryland resident, based in Baltimore, for more than 100 years. It has selected its home forum for this litigation. The conduct giving rise to the Complaint occurred in this jurisdiction, at least to the extent that the absence of a required event can 'occur' anywhere. The Complaint alleges that the Defendants were obligated under the Agreement to deliver funds to F&D, and that the Defendants have refused and failed to do so. The absence of that required delivery occurred in this jurisdiction. This forum clearly has a connection with, and interest in, the controversy: one of Maryland's corporate citizens has been deprived of its due payment in the amount of more than $3 million. The citizens of this jurisdiction have an interest in serving as factfinders to resolve this dispute. Defendants' unsupported assertions to the contrary are without the force of substance. *See* Mem. at 11-12.

Defendants argue that transfer would avoid the possibility of a Maryland court applying New York law. *See* Mem. at 16. This argument is based on the erroneous premise that New York law governs the 1986 Agreement. *Id.* at 15-16. Defendants' argument suffers from compound errors of fact and law. First, it is nonsense to assert, as Defendants and O'Neill have, that Barbara Woolard's certification dated July 8, 1986, was the last act necessary to give the

Agreement binding effect. Mem. at 2-3; Affidavit of Peter J. O'Neill, Feb. 19, 2003, ¶ 19 ("O'Neill Aff."). There is nothing in the Agreement that requires the certification to make the contract effective. The Woolard certification expressly states that it is a *copy* of resolutions passed by Agway's Board of Directors "at a meeting held on the 14th day of November, 1985 . . . ." Mem., Exhibit A. Thus, the *act* giving authority to "R.J. Ryan Jr., Vice President-Treasurer" to execute contracts on behalf of Agway predates the execution of the Agreement by several months. Woolard's certification is nothing more than a record attesting to an earlier act.

Second, Defendants are wrong about a central fact on which they rest their "last act necessary" argument. Defendants and O'Neill both assert, without any supporting evidence whatsoever, that "[a]s evidenced by the Indemnity Agreement, F&D also signed the Agreement through Friend R. Nagle, Vice President, on April 10, 1986." Mem. at 2; O'Neill Aff. ¶ 18. F&D is aware of no such evidence in the Agreement, or elsewhere, that supports such a conclusion. Apparently, Defendants felt it was necessary to establish that both parties executed the Agreement at the same time. Not only have Defendants offered no evidence to support their position, they assert a highly unlikely event, given that the signatories to the Agreement maintained offices in cities separated by several hundred miles and that there is no evidence of a meeting to execute the document or that the document was transmitted between the parties by electronic means. While it would be inappropriate to turn this preliminary motion into a contest of facts, all indications suggest that Friend R. Nagle, who is now deceased, and Robert L. Meyer, who is now retired from F&D, signed the 1986 Agreement in F&D's home office in Baltimore, Maryland, *after* the 1986 Agreement had been executed by Robert J. Ryan on April 10, 1986, whose signature is notarized evidencing the date. *See* Declaration of Dennis R. Hayden, ¶¶ 4-6, filed herewith ("Hayden Decl.").

Third, the Defendants are wrong on the law. Assuming the parties are authorized to act, a contract becomes binding and enforceable when an offer for consideration is accepted. *See generally,* Restatement (Second) *Contracts* §§ 3 (noting requirement of mutual assent), 63 (an acceptance to an offer is operative and completes the manifestation of mutual assent to the agreement) (1981); Richard A. Lord, *Williston on Contracts*, 4th ed., § 4.3 (manifestation of assent by offer and acceptance is the classical model of creating informal contracts) (1991). In the case of the 1986 Agreement, the Defendants, among others, made the offer to indemnify F&D for consideration. Thus, when F&D accepted—by affixing the authorized signatures on the document containing the offer—the contract was legally binding and effective. As there is little doubt that Mr. Nagle and Mr. Meyer signed the 1986 Agreement in their offices in Maryland, then it is most likely that under Maryland's choice of law rules the 1986 Agreement would be construed according to Maryland state law. *See Riesett v. W. B. Doner & Co.*, 293 F.3d 164, 173 n.5 (4th Cir. 2002).

Defendants have failed—utterly—to establish that New York law would govern this contract, or that this is a factor supporting the transfer of this case to a New York court. To the contrary, if this case were transferred to New York, the New York court would be required to apply the law of the transferor state, *i.e.*, Maryland law. *See Van Dusen v. Barrack,* 376 U.S. 612 (1964) (holding that the transferee court in a case transferred pursuant to § 1404(a) must apply the law of the transferor court); *reaff'd in Ferens v. John Deere Co.*, 494 U.S. 516 (1990). If Maryland state choice of law rules would apply Maryland law to construe the contract, as Defendants assert, *see* Mem. at 7, then the New York court would have to apply Maryland law in resolving this dispute. Thus, if the case were transferred, the sort of result that Defendants argue should be avoided would instead obtain: a district court applying non-forum state law.

Defendants contend that there is another reason in the public interest to transfer the action to the Northern District of New York: the Agway bankruptcy case. Defendants argue that "[t]he general [bankruptcy] policy is to have all proceedings related to a bankruptcy tried in the court where the case is pending." Mem. at 18.[3] Plaintiffs do not dispute that, *within constitutional limits*, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997) (citation omitted). However, the constitutional limits on the bankruptcy court's powers, as codified by statute, would prevent this matter from being heard by the bankruptcy court absent the express consent of the parties: a bankruptcy court is not empowered to make final determinations, issue final orders, or conduct a jury trial without the express consent of the parties. 28 U.S.C. §§ 157(c) & (e). Thus, Defendants have failed to establish that the general bankruptcy policy they cite in support of a transfer would be realized if transfer were granted.

In sum, Defendants have not demonstrated that a transfer of this action is warranted "in the interest of justice." 28 U.S.C. § 1404(a). Defendants have failed to show that any public interest or jurisprudential policy would be served by a transfer of this action to the Northern District of New York. The Defendants have shown no reason to overcome the public policy of favoring the plaintiff's choice of home forum, Defendants have failed to establish that New York law would govern this case, and Defendants have failed to establish that such a transfer would further the general bankruptcy policy goals identified.

---

[3] F&D does not here concede, and expressly reserves its right to contest, that the instant action is a "related to" proceeding as that term is used in 28 U.S.C. § 1334.

B.  **Private Interest Factors Do Not Justify Transfer**

It is clear that in any dispute between parties that do not reside in the same jurisdiction, the private interests of one or the other party will be inconvenienced to some extent. It is also clear that Syracuse, New York, is not so distant from Baltimore, Maryland as to present extraordinary inconvenience or expense. In an effort to support their argument that the convenience of the witnesses would be better served by transfer to the Northern District of New York Defendants identify a handful of witnesses that they allege are retired and therefore no long under the "control" of the parties, but who reside in and around the city of Syracuse, New York. *See* Mem. at 12-13. Defendants' self-serving conclusions depend in part on self-serving speculation and in part on self-serving blindness to the fact that F&D would have similar, if not greater, problems if this action were transferred to New York. First, Defendants suppose unwilling and uncooperative nonparty witnesses, arguing that they will be handicapped by not being able to present live testimony of witnesses who do not reside within the Maryland court's subpoena power. *See* Mem. at 13.

In their calculations, Defendants, of course, fail to note the several individuals who worked at F&D's home surety office and legal department at the time the 1986 Agreement was negotiated and executed—who do not reside in the 100 mile radius of the courts of the Northern District of New York—but who had responsibility for oversight, review, approval, and signature authority in respect of the 1986 Agreement. Those now retired from F&D who were directly involved with the Agway account at the time the 1986 Indemnity Agreement was made include Robert L. Meyer, Joseph C. McHugh, and Dennis Palmer, all of whom live in the greater Baltimore area and are not subject to the subpoena power of the United States District Court for the Northern District of New York. *See* Hayden Decl. ¶¶ 6 – 8. In addition, others who are

familiar with the past practices and policies of F&D's commercial underwriting procedures in the Surety Department, *i.e.*, the policies and practices that were in effect at the time the 1986 Agreement was made, are based in F&D's home office in Baltimore and live in the Baltimore area. *See* Hayden Decl. ¶¶ 9 – 11. These witnesses, with knowledge critical to the facts that must be proved in this litigation, would be greatly inconvenienced, and in some cases not necessarily even available for live testimony, if the action were transferred to the Northern District of New York.

Clearly, the inconvenience to Plaintiff's witnesses and resulting potential detriment to Plaintiffs' case from unwilling or uncooperative nonparty witnesses is as great as, or greater than, the inconvenience and potential detriment Defendants have described in their papers. Defendants have succeeded only in establishing that a transfer would *shift* the inconvenience from one party to another, not that Defendants' private interests in transfer outweigh Plaintiff's private interests in keeping the litigation in its home forum. Shifting the inconvenience does not justify a § 1404(a) transfer, as the court in *Choice Hotels v. Madison Three* concluded:

> As for the convenience factors which courts have routinely examined in applying § 1404(a), those considerations are largely a wash in this case. On balance, each party will suffer some inconvenience in connection with the trial of this case, no matter the forum. Each would like to have access to local witnesses and each would like to avoid the inconvenience of litigating away from home. Each would have to bear the incidental costs of defending a suit outside of his or its state of residence. To a large extent, then, there has been no substantial showing by defendants that a transfer under the circumstances of this case would do anything other than ***shift the greater burden and inconvenience of the trial from defendants to plaintiff, which is not a proper purpose of a transfer of venue.***

23 F. Supp.2d at 622 (footnote and citations omitted) (emphasis added). In short, Defendants have not proved that the sum total of all inconvenience and expense associated with this

litigation, *i.e.*, the private interests involved, would be significantly reduced if the case were transferred, requiring F&D to litigate away from its home forum.

### C. Defendants Failed to Make the Showing Required for a § 1404(a) Transfer

The public interest factors weigh heavily against transfer of this action. The deference properly accorded a plaintiff that has elected to litigate in its home forum where the conduct giving rise to the cause of action occurred, Maryland's connection to and interest in this controversy, and the fact that transfer will not serve any policy goals of the bankruptcy court and may require a district court to apply non-forum state law, all support a denial of the motion to transfer this case. Consideration of the private interests affected make clear that Defendants' motion is based simply on a hope to minimize its own inconvenience at the expense of F&D's inconvenience. Defendants have fallen far short of meeting their burden of persuasion for a § 1404(a) transfer, which requires a "defendant to show the necessity for a transfer, not by a bare balance of convenience, but by a preponderance." *Dev. Co. of Am. v. Ins. Co. of N. Am.*, 249 F. Supp. at 118-19. Accordingly, Defendants' motion to transfer this action to the Northern District of New York should be denied.

### CONCLUSION

For the reasons stated above, there can be no serious debate that on the basis of the facts alleged in the Complaint, this Court is authorized by Maryland's long arm statute, §§ 6-103(a), (b)(1) & (b)(6), to exercise specific personal jurisdiction over the Defendants to this action, and that doing so is permitted by the United States Constitution. Accordingly, Defendants' motion to dismiss this action for want of personal jurisdiction should be denied.

Defendants have failed to demonstrate that there are any public interest or public policy reasons supporting transfer of this action pursuant to 28 U.S.C. § 1404(a). Defendants have also failed to establish that there are sufficient private interests to warrant such a transfer. Defendants have therefore failed to meet the burden imposed on them in requesting a transfer, and their request should be denied.

STEPTOE & JOHNSON, LLP

George R. Calhoun, V (MD 025018)
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
(202) 429-3000 (tel)
(202) 261-0510 (fax)

*Of Counsel:*
Filiberto Agusti
Ellen Steury
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
(202) 429-3000 (tel)
(202) 261-0510 (fax)