UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
In re Agway, Inc.,

                              Debtor.

------------------------------------------------------------
In re Agway General Agency, Inc.,

                              Debtor.

------------------------------------------------------------
In re Brubaker Agronomic Consulting
    Service, LLC,

                              Debtor.

------------------------------------------------------------
In re Country Best Adams, LLC,

                              Debtor.

------------------------------------------------------------
In re Country Best-DeBerry LLC,

                              Debtor.

------------------------------------------------------------
In re Feed Commodities International, LLC,

                              Debtor.

------------------------------------------------------------
Agway, Inc., Telmark, LLC., Agway Energy
Products, LLC., Agway Energy Services, Inc.,
Agway Energy Services, PA, Inc.

                             Plaintiffs,
       vs.

Fidelity and Deposit Company of Maryland,

                            Defendant.
------------------------------------------------------------

Case No. 02-65872 (Main Case)
Jointly Administered
Chapter 11 Proceedings

Case No. 02-65873

Case No. 02-65874

Case No. 02-65875

Case No. 02-65876

Case No. 02-65877

Adv. Pro. No. _____

## **COMPLAINT**

## JURISDICTION AND VENUE

1. On October 1, 2002 ("Petition Date"), Agway, Inc. filed a petition under Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the Northern District of New York..

2. Since the Petition Date, Agway, Inc. has operated its business as a debtor in possession.

3. This Court has jurisdiction in this action under 28 U.S.C. § 1334, 28 U.S.C. §157 and 28 U.S.C. § 2201.

4. Venue is proper in this Court under 28 U.S.C. § 1334 and this district's standing order of reference.

5. This action is a core proceeding.

## PARTIES

6. Fidelity and Deposit Company of Maryland ("F&D"), is incorporated under the laws of the State of Maryland, with its principal place of business at 3910 Keswick Road, Baltimore, Maryland, 21211.  F&D is engaged in the making and executing of a certain types of bonds, under which, as surety, it guarantees another's performance for, *inter alia,* payment of premiums of insurance contracts in accordance with their terms and conditions.

7. F&D filed a pleading with this Court in response to the motion to approve the sale of Telmark, LLC's assets to Wells Fargo.

8. F&D filed a notice of appearance with this Court.

9. F&D's counsel have moved for an order of this Court approving their admission to practice before this Court in Agway, Inc.'s bankruptcy case.

10. During the time periods that are relevant herein, F&D has transacted business in the State of New York and within the Northern District of New York.

11. During the time periods that are relevant herein, F&D has maintained an office to transact business within the Northern District of New York.

12. Telmark, LLC (hereinafter "Telmark") is a limited liability company organized under the laws of Delaware, with its registered office at 333 Butternut Drive, Dewitt, New York, 13214.

13. Agway, Inc. is a Delaware Corporation with its principal place of business at 333 Butternut Drive, Dewitt, New York, 13214.

14. Agway Energy Products, LLC (hereinafter "Energy Products") is a limited liability company organized under the laws of Delaware, with its registered office at 333 Butternut Drive, Dewitt, New York, 13214.

15. Agway Energy Services, Inc. (hereinafter "Energy Services") is incorporated under the laws of Delaware, with its principal place of business at 333 Butternut Drive, Dewitt, New York, 13214.

16. Agway Energy Services-PA, Inc. (hereinafter "Energy Services-PA") is incorporated under the laws of Delaware with its principal place of business at 333 Butternut Drive, Dewitt, New York, 13214, and with a registered office in the Commonwealth of Pennsylvania.

17. Energy Services, Energy Services-PA , Energy Products (collectively referred to as "Agway Energy") and Telmark are wholly owned subsidiaries of Agway Inc.

## **FACTS**

18. Since sometime in 1983, F&D has issued numerous bonds on behalf of Agway Inc. and/or its various subsidiaries. In some instances, these bonds guarantee payment of certain obligations, e.g., deductible liabilities, under insurance policies that directly benefit Agway Inc. and/or its various subsidiaries.

19. In conjunction with issuing its initial bonds on behalf of Agway Inc. and its subsidiaries, Agway, Inc. executed and delivered to F&D an Agreement of Indemnity dated July 1, 1983 ("1983 Indemnity Agreement"). See 1983 Indemnity Agreement, a true and correct copy of which is attached as Exhibit A.

20. On or about April 10, 1986, Agway Inc. executed and delivered to F&D an Agreement of Indemnity ("1986 Indemnity Agreement"). See 1986 Indemnity Agreement, a true and correct copy of which is attached as Exhibit B.

21. On or about February 28, 2002, Agway, Inc. executed and delivered to F&D yet another Agreement of Indemnify ("2002 Indemnity Agreement"), a true and correct copy of which is attached as Exhibit "C".

22. The 1983, 1986 and 2002 Indemnity Agreements ("Indemnity Agreements") obligate Agway, Inc. to indemnify and exonerate F&D under specified conditions. See ¶ Second, 1986 Indemnity Agreement.

23. The Indemnity Agreements further provide that with regard to its indemnity obligation, Agway, Inc. shall make payment to F&D at certain times and under specific circumstances.

24. The 1983 and 1986 Indemnity Agreements have a "signature page" which purports to impose the obligations of the "Indemnitor" upon all entities in which Agway, Inc. had an ownership

interest of 50% or more, whether those entities existed at that time or were thereafter created.

25. The 2002 Indemnity Agreement contains different terms than the 1983 and 1986 Indemnity Agreements. For example, the 2002 Indemnity Agreement does not contain the "signature page" referred to in the preceding paragraph, nor does it purport to obligate entities in which Agway, Inc. had an ownership interest.

26. Over time, F&D, as surety, issued certain surety bonds (collectively, "the Bonds') as collateral for Agway's obligations under various insurance contracts between Agway, Inc. and Pacific Employers Insurance Company ("Pacific Employers" or "ACE"), between Agway, Inc. and Reliance National Insurance Company ("Reliance"), and between Agway, Inc. and National Union Fire Insurance Company of Pittsburgh, PA/AIGRM ("AIG").

27. Agway, Inc. paid premiums for the issuance of these surety bonds, totaling approximately $489,000 since 1996.

28. The bonds issued by F&D were required by the insurance carriers who issued policies to Agway, Inc., as collateral security for Agway, Inc.'s performance under those policies and certain agreements which are related thereto.

29. The bonds (along with letters of credit also issued to the insurance carriers) provide the insurance carriers with collateral from which to seek reimbursement should Agway, Inc. fail to pay its deductible and other obligations under the various policies. As many of the Agway, Inc. insurance policies have large deductibles, (i.e., $1,000,000 per occurrence), the face amount of bonds and Letters of Credit securing Agway's obligations presently exceeds $50,000,000.

30. F&D issued that certain surety bond in favor of Pacific Employers in the penal sum amount

of $8,000,000.00, dated July 13, 2000, and identified as Bond No. LPM08333381, ("Pacific Employers Bond").

31. F&D issued four surety bonds in favor of Reliance (collectively, "Reliance Bonds"). These were (a) Bond No. LPM004340 in the penal sum amount of $1,600,000.00, dated January 17, 1997("Reliance Bond No. LPM0004340"), (b) Bond No. LPM8122286 in the penal sum amount of $2,500,000.00,.dated February 5, 1998 ("Reliance Bond No. LPM8122286"), (c) Bond No. LPM8145339 in the penal sum amount of $3,073,484.50, dated July 30, 1998 ("Reliance Bond No. LPM8145339"), (d) Bond No. LPM 08333332 in the penal sum of $2,000,000.00, dated July 19, 1999 ("Reliance Bond No. LPM 08333332).

32. F&D also issued that certain surety bond in favor of AIG in the penal sum amount of $8,514,000.00, dated July 30, 1998, and identified as Bond No. LPM8145340, ("AIG Bond").

33. F&D executed each of the Bonds, as surety, for Agway Inc., as principal.

34. On or about July 23, 2002 on Bond No. LPM0004340, July 22, 2002 on Bond No. LPM8122286, July 22, 2002 on Bond No. LPM8145339 and July 19, 2002 on Bond No. LPM0833332, F&D gave written notice ("Reliance Notice") to Reliance of its intention to cancel the Reliance surety bonds.

35. In accordance with the terms of the Reliance Surety bonds, and as a result of receiving the Reliance Notice, on October 1, 2002, Reliance made demand upon F&D for the penal sum of the Reliance bonds, $7,500,000.00.

36. In response to Reliance's demand, F&D sought to reinstate the bonds.

37. Reliance has yet to agree to allow the bonds to be reinstated.

38. On or about July 19, 2002, F&D gave notice (the "Pacific Employer's Notice") to Pacific Employers' of its intention to cancel the Pacific Employers' surety bonds.

39. F&D's notice was improperly given under the terms of the Pacific Employers surety bonds.

40. F&D has not yet withdrawn its improperly given Pacific Employer's Notice, although it has been requested to do so by Pacific Employers.

41. On or about October 1, 2002, Agway Inc. filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code.

42. As a result of Agway Inc.'s default in reimbursing certain obligations after the Petition Date, and by letter dated November 6, 2002, Pacific Employers demanded that F&D perform under the Pacific Employers Bond, demanding payments in the aggregate sum of $455,352.00 (Four Hundred Fifty-Five Three Hundred Fifty-Two Dollars).

43. By letter dated December 6, 2002, F&D made demand upon Telmark and Agway Energy for payment under the 1986 Indemnity Agreement.

44. By letter dated December 19, 2002, F&D made a further demand upon Telmark and Agway Energy for payment of funds in accordance with the 1986 Indemnity Agreement.

45. In a letter dated December 20, 2002, Telmark and Agway Energy, through their attorneys, denied any liability under the 1986 Indemnity Agreement and requested a copy of any agreement executed by Telmark or Agway Energy that purported to impose liability upon them.

46. It appears that in response to the demands made upon it by Pacific Employers and Reliance and the expected demands to be made on it by AIG, F&D set reserves of $3,154,925.00 (Three Million One Hundred Fifty-Four Thousand Nine Hundred Twenty-Five Dollars).

47. Upon information and belief, F&D has not made any payments to Reliance or AIG, and upon information and belief, F&D has made a partial payment to Pacific Employers.

48. There is an actual justiciable controversy between F&D and Agway, Inc. and its subsidiaries with regard to the extent of liability under the Indemnity Agreements as Agway, Inc. and its subsidiaries assert that only Agway, Inc. is liable under the Indemnity Agreements and F&D asserts that Agway, Inc., Telmark and Agway Energy are each jointly and severally liable under the Indemnity Agreements (or at least under the 1986 Indemnity Agreement).

49. The outcome of this dispute will have a material impact upon the administration of the Agway, Inc.'s estate and its unsecured creditors.

50. If only Agway, Inc. is liable under the Indemnity Agreements, then F&D will have an unsecured claim against Agway, Inc.'s estate and it will receive the same treatment as other unsecured creditors, i.e., its claim will be paid under a Plan at a distribution rate approved by the Court which is fairly presently estimated to be less than 100%.

51. If Telmark and/or Agway Energy are liable under the Indemnity Agreements, then F&D will be paid in full as such a finding will impose a joint and several liability upon each entity and F&D has a security interest in funds which equal the face amount of F&D's liability under all of the surety bonds it issued.

52. If there is a finding of joint and several liability, then there will necessarily be the need for an allocation of actual liabilities among the entities found to be liable to F&D.

53. The allocation will have an impact upon the administration of Agway, Inc.'s estate.

54. In addition, because the surety bonds are collateral to the insurance carriers for obligations under the insurance policies which benefit Agway, Inc. and the other insureds, including

Telmark and Agway Energy, and the claims under those insurance policies (primarily personal injury and property damage) need to be liquidated, and those claims will be liquidated over a time period which may reasonably extend at least three years, it will be necessary for there to be a process to estimate the impact of F&D's contingent claims (as its actual exposure, if any, is contingent upon its actual payment which in turn is contingent upon an unreimbursed payment made by an insurance carrier on behalf of one of the insureds, including Agway, Inc.).

55. Furthermore, while F&D claims a present entitlement to be "put in funds" for its reserves, if its position is upheld and Telmark and/or Agway Energy are determined to be liable under the Indemnity Agreements, there will be a transfer of funds from these entities to F&D, which is in essence a transfer of property in which Agway, Inc. has an indisputable interest.

56. F&D has certainly recognized Agway, Inc.'s interest in the outcome of this litigation by filing an objection to the Telmark sale in which it recited its concern over the transfer of net proceeds to Agway, Inc. and by filing a notice of appearance in the bankruptcy case.

57. F&D's improper attempt at cancellation of bonds issued to Pacific Employers also has an impact upon Agway, Inc.'s estate as if the bonds are ultimately determined to have been properly cancelled, then Pacific Employers will claim to be under collateralized and may assert that Agway, Inc. is in breach of its collateral covenants, potentially putting Agway, Inc.'s current insurance program at risk, as well as impairing Agway, Inc.'s ability to secure a renewal of its insurance coverage at the expiration of the current policy year, June 2003.

58. By filing the objection and a notice of appearance, F&D has consented to this Court's jurisdiction over this controversy notwithstanding its prior commencement of an action

against Telmark and Agway Energy in the District Court for Maryland; a jurisdiction where neither of the defendants therein had sufficient contacts to justify personal jurisdiction, nor in which venue factors justify that it be the place of trial of the action.[1]

59. The resolution of this controversy may require resort to parol evidence which would be provided by current and former employees of Agway, Inc., residing within the Northern District of New York, reference to the books and records of Agway, Inc. (and Telmark and Agway Energy) which are located within this district, and former employees of F&D, some of whom also reside within this district.

### First Claim

60. Plaintiffs repeat the allegations in paragraphs 1 through 59 above in support of their First Claim.

61. Upon information and belief, based upon the rationale of the Second Circuit Court of Appeals February 25, 2003 decision in <u>Queenie, Ltd. v. Nygard Intnl</u>, 2003 U.S. App. LEXIS 3398 (2d Cir. 2003) the stay provided by 11 U.S.C. §362 is applicable to the action commenced by F&D in the District Court for the District of Maryland.

62. Accordingly, plaintiffs are entitled to a judgment staying F&D from prosecuting the action commenced by F&D in the District Court of Maryland, in favor of a resolution of the rights of the parties in this forum.

---

[1] A motion to dismiss the action under FRCP 12(b)(2) or to transfer has been filed, briefing has not yet been completed and therefore the matter has not yet been submitted to the District Court for decision.

## Second Claim

63. Plaintiffs repeat the allegations in paragraphs 1 through 62 above in support of their Second Claim.

64. Based upon the foregoing, there is sufficient and compelling cause to justify the extension of the stay under 11 U.S.C. § 362 in behalf of Telmark and Agway Energy, under 11 U.S.C. §105 and the rationale of the Second Circuit Court of Appeals February 25, 2003 decision in <u>Queenie, Ltd. v. Nygard Intnl</u>, 2003 U.S. App. LEXIS 3398 (2d Cir. 2003).

65. Accordingly, plaintiffs are entitled to a judgment staying F&D from prosecuting the action commenced by F&D in the District Court of Maryland, in favor of a resolution of the rights of the parties in this forum.

## Third Claim

66. Plaintiffs repeat the allegations in paragraphs 1 through 65 above in support of their Third Claim.

67. Plaintiffs are entitled to a judgment declaring their rights and obligations under the Indemnity Agreements, to wit, that Telmark and Agway Energy are not liable under any of the Indemnity Agreements and that F&D's sole recourse, if any, is against Agway, Inc.

## Fourth Claim

68. Agway, Inc. repeats the allegations in paragraphs 1 through 67 above in support of the Fourth Claim.

69. Upon information and belief, the Indemnity Agreement(s) that this Court's declares is extant and controlling, is "executory" as that term is defined under Chapter 11 of Title 11 of the

United States Code.

70. Agway, Inc has not assumed the executory Indemnity Agreement(s).

71. To the extent that there is an executory contract in this respect, Agway, Inc. seeks an order of the Court approving of the rejection of the executory obligation.

### Fifth Claim

72. Agway, Inc. repeats the allegations in paragraphs 1 through 71 above in support of the Fifth Claim.

73. Agway, Inc. is entitled to a judgment estimating the contingent claims of F&D as against it.

### Sixth Claim

74. Agway, Inc. repeats the allegations in paragraphs 1through 73 above in support of the Sixth Claim.

75. The allegations in the complaint filed by F&D in the action commenced by it in the District of Maryland seek damages for "negligent misrepresentation" with respect to which of the plaintiff entities herein were obligating themselves under the 1986 Indemnity Agreement.

76. As the 1986 Indemnity Agreement was executed by Agway, Inc. only and was negotiated by Agway, Inc. and on behalf of Agway, Inc., it may be fairly concluded that F&D asserts that Agway, Inc. promised that the other entities would bind themselves to the 1986 Indemnity Agreement, which they did not in fact or in law do.

77. To the extent that it is claimed that Agway, Inc. promised that the other entities would bind themselves, the promise is at best, an executory obligation on the part of Agway, Inc.

78. To the extent that there is an executory promise in this respect, Agway, Inc. seeks an order of the Court approving of the rejection of the executory obligation.

### Seventh Claim

79. Agway, Inc. repeats the allegations in paragraphs 1 through 78 above in support of the Sixth Claim.

80. To the extent this Court declares that Telmark is not liable under the Indemnity Agreements, Agway, Inc. is entitled to a judgment terminating F&D's security interest in the fund held by Agway, Inc. as collateral security for its claims (which fund was created by the Order of this Court approving the sale of Telmark assets).

WHEREFORE,

1. the plaintiffs respectfully request judgment:

    a. on the first claim, declaring the stay provided under 11 U.S.C. §362 is applicable to Telmark and Agway Energy;

    b. on the second claim, declaring the stay provided under 11 U.S.C. §362 should be extended to Telmark and Agway Energy;

    c. on the third claim, declaring the rights and obligations of the parties under the Indemnity Agreements, to wit, that Telmark and Agway Energy are not liable under any of the Indemnity Agreements and that F&D's sole recourse, if any, is against Agway, Inc.

    and

2. Agway, Inc. respectfully requests judgment:

    a. on the fourth claim, declaring the Indemnity Agreement(s) found to be extant, to

        be rejected and adjudicating the value of the rejection claim, pursuant to 11 U.S.C. §365;

    b.    on the fifth claim, estimating the value of F&D's contingent claims pursuant to 11 U.S.C. § 502(c);

    c.    on the sixth claim, declaring any executory promise rejected and adjudicating the value of the rejection claim, pursuant to 11 U.S.C. § 365; and

    d.    on the seventh claim, to the extent this Court declares that Telmark is not liable under the Indemnity Agreements, terminating F&D's security interest in the fund held by Agway, Inc. as collateral security for its claims (which fund was created by the Order of this Court approving the sale of Telmark assets).

and

3. the plaintiffs respectfully request such other and further relief as the Court deems just and proper.

Dated: Syracuse, New York
March ____, 2003.

**MENTER, RUDIN & TRIVELPIECE, P.C.**

By: _____
Jeffrey A. Dove, Esq. (Bar Roll No. 101532)
Mitchell J. Katz, Esq. (Bar Roll No. 301057)
500 South Salina Street, Suite 500
Syracuse, New York 13202-3300
Telephone: (315) 474-7541

- and –

**WEIL, GOTSHAL & MANGES LLP**
Marvin E. Jacob, Esq.
Judy G. Z. Liu, Esq.
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

*Attorneys for Debtors,*
*Debtors in Possession and Plaintiffs*