IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND, <br><br> Plaintiff, <br><br> v. <br><br> TELMARK, LLC *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. JFM 03 CV 0266 |

**PLAINTIFF'S SUR-REPLY TO DEFENDANTS'
MOTION TO DISMISS OR TRANSFER VENUE**

Plaintiff Fidelity and Deposit Company of Maryland ("F&D"), by and through counsel, and with express permission of this Court, hereby files its Sur-reply to Defendant's Motion to Dismiss or Transfer Venue.

**I.   PRELIMINARY STATEMENT**

Defendants in this action are wholly owned subsidiaries of Agway Inc., a debtor in a Chapter 11 reorganization in the Bankruptcy Court in the Northern District of New York. None of the Defendants, however, are in bankruptcy. On March 21, 2003, Defendants filed their Reply in this dispute over jurisdiction and venue. The day before, Defendants commenced an "adversary proceeding"—the bankruptcy equivalent of a lawsuit—against F&D in the Bankruptcy Court for the Northern District of New York. The adversary proceeding seeks to resolve the same issues as the action before this court.

In their Reply, Defendants reference their just-filed complaint in the adversary proceeding to bolster their argument for transfer of venue. In essence, Defendants argue that solvent defendants may stop a validly filed lawsuit and transfer venue merely by initiating a mirror lawsuit against the plaintiffs in their insolvent parent's bankruptcy proceeding. This attempt to use a second-filed lawsuit to bootstrap a transfer that is otherwise not justified simply has no basis in law and should be rejected. Defendants' request for a stay of the instant action pending a resolution of their second-filed action, *i.e.*, the adversary proceeding, should also be rejected, as Defendants have not established cause to upset the long-standing rule in this Circuit that the first-filed action takes priority while the second-filed action is stayed.

## II.   ARGUMENT

### A.   This Court Undoubtedly Has Personal Jurisdiction Over The Defendants

Defendants are driven to their adversary proceeding maneuver on Reply because their moving arguments are not viable. First, there can be no serious dispute that this Court has personal jurisdiction over the Defendants pursuant to Maryland's long-arm statute. Defendants' argument that the 1986 Agreement of Indemnity ("Indemnity Agreement") is not a subject encompassed by Md. Code Ann. *Cts. & Jud. Proc.* § 6-103(b)(6) is nonsense. The Indemnity Agreement is a "contract to insure or act as surety for . . . an obligation . . . to be performed within the state" on *two* accounts. It obligates F&D to perform as surety on bonds issued on behalf of the Defendants.[1] Further, the Indemnity Agreement obligates the Defendants to

---

[1] *See* Indemnity Agreement at ll. 12-17 ("upon the express understanding that this Agreement of Indemnity be given, the Surety [F&D] has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds;" and the Defendants and/or others may "request the Surety to refrain from cancelling said Bonds"), appended as Exhibit A to Defendants' Motion.

indemnify F&D for any resulting losses arising from F&D's performance on the Bonds.[2]

Second, Defendants' assertion that an "indemnity agreement" is not a § 6-103(b)(6) "insurance contract" ignores both plain English and the express terms of the statute. The provision clearly is not limited to "insurance contracts;"[3] the statute *expressly* includes contracts to act as surety. § 6-103(b)(6). Furthermore, the term "insurance" includes indemnity agreements: "coverage by contract whereby one party undertakes to *indemnify* or guarantee another against loss by a specified contingency or peril." *See Merriam Webster's Collegiate Dictionary*, 607 (10th ed. 1997).[4]

Third, F&D clearly has carried its burden of proof. All well-pled allegations must be taken as true unless contradicted by affidavit or other competent evidence. *See Mylan Lab., Inc. v. Akso, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (A court "must construe *all relevant pleading allegations* in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.") (citation and quotation omitted) (emphasis in the original). In its complaint, F&D expressly pled that Agway acted with actual and/or apparent authority in contracting with F&D. Defendants have not offered any competent

---

[2] *See* Indemnity Agreement at ll. 26 – 31 (the Defendants and/or others "shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature . . . [on account of the Bonds]."); *id.* ll. 31-40.

[3] Defendants' "support" for its position is a sentence fragment of *dictum* in a footnote, taken out of context. The whole sentence, omitting only the citation, states: "Subsection (b)(6) 'is a specialized subsection relating to *insurer and surety relationships*,' . . . and was intended to apply only to insurance contracts." *McKown v. Criser's Sales & Serv.*, 48 Md. App. 739, 743 n.2, 430 A.2d 91, 95 n.2 (1981) (emphasis added; citation omitted). Clearly, the court in *McKown* did not intend "insurance contract" to have the extremely narrow interpretation Defendants urge in their Reply. *See* Defs.' Reply at 4. Rather, the court in *McKown* used that term generically and in the same sentence explicitly acknowledged that surety contracts fall within the reach of § 6-103(b)(6).

[4] *See also id.* at 591 ("indemnity" is "security against hurt, loss or damage" and "indemnify" as "to secure against hurt, loss or damage").

evidence to refute the allegations of actual and/or apparent authority.[5] Accordingly, F&D's allegations must be taken as true and all inferences drawn in the light most favorable to F&D.[6]

### B. The Complaint In The Adversary Proceeding Does Not Justify Transfer To The Northern District Of New York

On the eve of the deadline for filing its Reply in the instant dispute regarding jurisdiction and venue, Defendants, along with their corporate parent Agway Inc., commenced an adversary proceeding against F&D in Agway's New York bankruptcy case. In the complaint filed in the adversary proceeding, Defendants seek a "declaratory judgment" determining and declaring the rights and obligations of the Defendants and F&D under the Indemnity Agreement.[7] In essence, the adversary proceeding is the mirror image of this lawsuit: here, F&D seeks damages based on its Indemnity Agreement rights and obligations; there, Defendants seek to deny F&D damages on a declaratory judgment that F&D has no such Indemnity Agreement rights and obligations because of an allegedly inconsistent indemnity agreement.[8] This maneuver is a naked attempt to

---

[5] See Aff. of Peter O'Neill (filed in support of Defs.' Motion); Reply Declaration of Thomas D. Keleher.

[6] Defendants' reference to piercing the corporate veil is a red herring. F&D made no allegations designed to pierce the corporate veil; rather, F&D expressly alleged actual and/or apparent authority.

In addition, Defendants' nearly exclusive reliance on cases involving § 6-103(b)(4) as the basis for jurisdiction is misplaced. That particular provision of the long-arm statute has a different, heightened "minimum contacts" threshold for jurisdiction. See Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F. Supp. 312, 318 (D. Md. 1983). As F&D does not assert jurisdiction under that provision, those cases are inapposite.

[7] Defendants also seek an extension of the automatic stay to prevent this lawsuit from proceeding, discussed below. In addition, the complaint seeks other relief on behalf of Agway Inc., not discussed here because the bankrupt is not a party before this Court.

[8] There is actually no inconsistency between the two agreements. The later agreement with Agway Inc. merely supplemented the earlier agreement with Agway Inc. to add an additional right vis-à-vis Agway Inc. This matter is not, however, before this Court and resolving it is beyond the scope of this sur-reply.

have the dispute pending before this Court resolved in another forum.[9] Although they are not in bankruptcy, Defendants argue that this Court must now refrain from addressing the complaint before it and permit Defendants to circumvent the "first-filed" rule because their parent entity is in bankruptcy. There is simply no basis for such an argument.

C. **Defendants' Adversary Proceeding Gambit Violates the "First-Filed" Rule**

Recognizing that they have not shown that the balance of convenience justifies a transfer of venue, Defendants try to craft a new "exception" to the "first-filed" rule that would make it inapplicable whenever defendants are subsidiaries of a parent in bankruptcy. As discussed below in detail, there is no such exception.

Defendants' new lawsuit triggers the prudential "first-filed" rule, which serves to promote judicial economy, efficiency, and deference to plaintiff's choice of forum.[10] The Fourth Circuit has approved the "first-to-file principle" as stated in *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 423 (2d Cir. 1965), noting that "[i]t has long been held in this circuit that, as a principle of sound judicial administration, the first suit should have priority 'absent the showing of balance of convenience in favor of the second action.'" *Ellicott Mach. Corp., v. Modern*

---

[9] Indeed, the "declaratory judgment" request is a compulsory counterclaim. This request "arises out of the transaction or occurrence that is the subject matter of the opposing party's [F&D] claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). Defendants are required to plead the counterclaim in this action, and are precluded from raising it in a subsequent lawsuit. *See Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000) ("If a party has a compulsory counterclaim and fails to plead it, the claim cannot be raised in a subsequent lawsuit."), *cert. denied,* 532 U.S. 1019 (2001).

[10] Defendants' latest maneuver to put this action in bankruptcy court does nothing to promote judicial economy and efficiency, a point that was made in F&D's Opposition. F&D is entitled to a jury trial of its claims before an Article III judge (F&D has filed its jury demand this date), so transfer to bankruptcy court does not offer any increase in judicial economy or efficiency.

*Welding Co.*, 502 F.2d 178, 180 & n.2 (4th Cir. 1974) (quoting *Remington Prods. Corp. v. Am. Aerovap, Inc.*, 192 F.2d 872, 873 (4th Cir. 1951) (affirming injunction prohibiting proceeding with a later-filed action which could have been joined with the pending action)). Further, the Fourth Circuit acknowledged that the "first-filed" rule serves "to honor the principle that a plaintiff may ordinarily select his forum unless there are factors of convenience sufficiently important to the parties and the court to occasion denying him that choice." *Id.* at 180.

This Court may enforce the "first-filed" rule by enjoining the parties before it in this action from proceeding in the later-filed action until after this action has been resolved. *See Ellicott Mach.*, 502 F.2d at 180; *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202 (2d Cir. 1970) (court with jurisdiction over either the first-filed action or the second-filed action is empowered to prevent further proceedings of the latter, and court in first-filed action might be bound to do so); *National Equip. Rental, Ltd., v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961) (the court in the first-filed suit may enjoin the suitor from proceeding in the second-filed suit if the latter states essentially the same claims) (citing cases); s*ee also* Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure § 1418, at 144-145 (1990 & Supp. 2002).

This Court should reject Defendants' last-minute attempt to bolster its bid for transfer of venue by improperly pleading a compulsory counterclaim as a new action in another jurisdiction. Defendants have not established that either the convenience of the parties or any special circumstances require upsetting the "first-filed" rule. Accordingly, this Court should not grant Defendants' request for a stay of this action.

D.   **There is No "Subsidiary of a Bankrupt Entity" Exception to the "First-Filed" Rule; Being A Subsidiary of a Bankrupt Entity Is Not the "Unusual Circumstance" Required to Stay Proceeding Against a Solvent Entity**

Defendants, all solvent, anchor their attempt to shift this case to New York bankruptcy court on the "unusual circumstances" exception to the general rule that the bankruptcy stay applies exclusively to bankrupts. No court has ever found, however, that the mere fact a defendant is a subsidiary of bankrupt parent rises to the "unusual circumstances" sufficient to prevent proceeding against the defendant subsidiary. Indeed, such a novel rule would displace the "first filed" rule in all cases involving subsidiaries of bankrupt entities.

It is black letter law that the automatic stay protects bankrupts, not separate legal entities that may be associated with the bankrupt. *See Collier on Bankruptcy* ¶ 362.04 (15th ed. 1993). "[T]he automatic stay provisions of [§] 362 do not extend to non-bankrupt debtors." *McKay v. Lake Region Credit Union (In re Harveland),* Nos. 83-05227, 84-7058, 1984 WL 558008, at *1 (Bankr. D.N.D. Aug. 24, 1984). *See also Credit Alliance, Corp. v. Williams,* 851 F.2d 119, 120 (4th Cir. 1988) ("[T]he automatic stay provision of the Bankruptcy Code stays proceedings against the debtor only, and . . . no such relief is available to the non-bankrupt guarantor."); *Croyden Assocs. v. Alleco, Inc.,* 969 F.2d 675, 677 (8th Cir. 1992) ("[T]he stay is not available to nonbankrupt codefendants, 'even if they are in a similar legal or factual nexus with the debtor.'") (citation omitted).

The Fourth Circuit has recognized an "unusual circumstances" exception to the general rule that the stay applies exclusively to bankrupts. That exception applies where "there is such identity between the [bankrupt] debtor and the third party defendant that the debtor may be said to be the real party defendant and that a judgment against the third party defendant will in effect be a judgment against the [bankrupt] debtor." *Credit Alliance,* 851 F.2d at 121 (4th Cir. 1988); *see Fidelity Nat'l Title Ins. Co v. Bozzuto,* 227 B.R. 466, 470 (E.D. Va. 1998); *H.H. Robins Co.*

- 7 -

*v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). The "unusual circumstances" exception is "to be narrowly construed, [it is] appropriate only in extremely unusual circumstances." *In re Richard Vance & Co.*, 289 B.R. 692 (Bankr. C.D. Ill. 2003).

Mere ownership by a bankrupt company of all the stock of a solvent defendant simply does not constitute "unusual circumstances." "In general, and absent unusual circumstances, *the property of a debtor's subsidiary is not considered property of the debtor by virtue of the debtor's sole ownership of the subsidiary*." *In re Holywell Corporation*, 118 B.R. 876, 879 (S.D. Fla. 1990) (finding that a bankruptcy court had improperly exercised jurisdiction over wholly-owned subsidiaries of a bankrupt in an adversary proceeding) (emphasis added); *see In re Lease Purchase Corp.*, Nos. 87-11177, Adv. 90-1092, 1992 WL 12004358, at *4 (S.D. Ga. 1992) (bankrupt parent's 100% ownership of solvent subsidiaries does not subject subsidiaries' assets to bankruptcy court jurisdiction); *In re Reading Co.*, 59 B.R. 1011, 1013 (E.D. Pa. 1986) ("Absent unusual circumstances, the property of a debtor's subsidiary is not considered property of the debtor by virtue of the debtor's sole ownership of the subsidiary."); *In re South Jersey Land Corp.*, 361 F. 2d 610 (3d Cir. 1966) (holding that it was improper for a bankruptcy court to stay a foreclosure proceeding against solvent entity that was five-ninths owned by the bankrupt entity).

Being a corporate affiliate of a bankrupt, a partner in a bankrupt partnership, or a co-defendant of a bankrupt in pending litigation does not warrant extension of the stay prohibiting proceedings against the non-bankrupt. *See Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993) (finding that the agency relationship between the bankrupt partnership and the non-bankrupt partner co-defendants did not constitute "unusual circumstances" warranting application of the automatic stay to the non-bankrupts). A guaranty relationship does warrant an extension of the

stay to non-bankrupt entities, either. *Credit Alliance,* 851 F.2d at 121 ("A reading of § 362 restricting a creditor's ability to proceed against its guarantor would eliminate the protection of assured creditors contemplated by the Bankruptcy Code."). The logic supporting the conclusion in *Credit Alliance* applies equally here. F&D required multiple indemnitors with joint and several liability to indemnify it for the bonds issued on behalf of those same entities. F&D should not now be stayed from proceeding against the non-bankrupt indemnitors just because one or more of the several indemnitors is bankrupt.

Defendants rely on the holding in *Queenie, Ltd. v. NYGARD Int'l,* 321 F.3d 282, 288 (2d Cir. 2003), to buttress their position. Contrary to Defendants' assertion, however, the *Queenie* holding does not "require" this Court to stay the action before it. *Queenie* represents nothing more than one of those rare situations presenting the "unusual circumstance" where there was "such an identity between the [bankrupt] debtor and the third party defendant that the debtor may be said to be the real party defendant and that a judgment against the third party defendant will in effect be a judgment or finding against the debtor." *Queenie,* 321 F.3d at 288 (quoting *Credit Alliance,* 851 F.2d at 121).

The facts in *Queenie* giving rise to the result are readily distinguishable from the facts of the situation at hand. In *Queenie,* an individual bankrupt judgment-debtor was the sole shareholder of the business, also a judgment-debtor. The question before the court was whether the automatic stay should be extended to non-bankrupts in order to stay an appeal that would effectively determine the rights and obligations of the individual bankrupt. The court sought the opinion of counsel representing various parties in the case, and not one of them—not even the judgment-creditor—opposed the application of the stay to non-bankrupts. Even under those

circumstances, the court extended the protection only to the individual bankrupt's wholly owned and closely held business, denying it to other parties. *See Queenie*, 321 F.3d at 287-88.

Contrary to Defendants' suggestion, the Second Circuit did not fashion a new rule with its holding in the *Queenie* case; rather it made one of those "unusual circumstances" exceptions where there was not a single objection to doing so. *Id.* Further, the court in *Queenie* acknowledged the general rule that the stay does not apply to non-bankrupt co-defendants. *Id.* at 287. The Second Circuit certainly made no pronouncement extending "unusual circumstances" to all wholly owned subsidiaries.

Here, Defendants unequivocally do ***not*** share such an identity with the bankrupt that a judgment against Defendants is tantamount to a judgment against the bankrupt. Unlike *Queenie,* the determination of F&D's contract rights against the Defendants will not determine its contract rights against Agway Inc. Indeed, there is no dispute that Agway Inc. is liable under the Indemnity Agreement; the dispute in this action centers around whether the Defendants are also liable under that Agreement. F&D's lawsuit targets ***only*** the property of the Defendants. The Defendants are not closely held enterprises belonging to an individual. They are large independent businesses, with different products and services than Agway Inc. Their financial condition has been such that they have not deemed it appropriate to file for bankruptcy. To be sure, each Defendant is wholly owned by Agway Inc. and a judgment may reduce dividends available to the bankrupt shareholder. But courts have repeatedly found such a relationship insufficient to qualify as an "unusual circumstance" justifying extension of the stay to non-debtors, and the *Queenie* decision is certainly not to the contrary.

Indeed, if mere ownership were sufficient, the "unusual circumstances" exception would swallow the general rule against extension of the stay to non-bankrupts. Defendants' logic—that

because the value of Debtor's property interest in a legally distinct non-bankrupt entity may be diminished as a result of a lawsuit, the Debtor's automatic stay protection should be extended to encompass non-bankrupts—would produce absurd results.  If Defendants' suggested rule were to prevail, then a bankrupt parent company could prevent plaintiffs from bringing actions against its solvent subsidiaries in a forum of plaintiffs' choosing.  There would be yet another reason for filing "strategic bankruptcies" without even needing to subject one's subsidiaries to bankruptcy administration.  No such forum selection rule can be derived from *Queenie* or any other decision.

### III.   CONCLUSION

Defendants are not eligible for an "unusual circumstances" exception to the general rule that the automatic stay does not protect non-bankrupts.  Yet, in an effort to persuade this Court to transfer this case to the Northern District of New York, and thereby deprive F&D of its choice of forum, Defendants have flaunted proper procedure and ignored the overwhelming weight of case law.  This Court should not countenance the Defendants' attempt to litigate the same issues in the action now pending before it in an action that was later-filed elsewhere.  Accordingly, F&D respectfully requests this Court to deny Defendants' Motion on all accounts, including their request for a stay of these proceedings.

Dated:  April 7, 2003

Respectfully submitted,
STEPTOE & JOHNSON, LLP

/s/.....................
George R. Calhoun, V (25018)
Filiberto Agusti
Ellen Steury
1330 Connecticut Avenue, NW
Washington, DC  20036-1795
(202) 429-3000 (tel)
(202) 429-3902 (fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>Plaintiff,<br><br>v.<br><br>TELMARK, LLC *et al.*,<br><br>Defendants. | Civil Action No. JFM 03 CV 0266 |

## **PROPOSED ORDER**

Upon consideration of the memoranda of law submitted by the parties, it is this _____ day of _____, 2003

ORDERED that

Defendants' Motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue, and Defendants' request for a stay of the above-captioned action, are hereby DENIED.

_____
J. Frederick Motz, Judge
United States District Court